Mr. Kola. Good morning. May it please the Court, Counsel. My name is D. Suf Kola. I represent the petitioner in this matter, Oganbaatar Tsegmed, who is an assistant in Nashville of Mongolia. He arrived in the United States in 2004. About four years after that, he applied for asylum in this country. The basis for the asylum was several factors of when he left Mongolia. The primary issue that was first addressed in our brief was the issue of asylum. Is he statutorily eligible to apply for asylum? So there's a long line of cases in this Court, and not every circuit agrees with us about this, but this Court has a very long line of cases that say the question whether a person qualifies for either changed circumstances or extraordinary circumstances is one of fact, and therefore it does not fall under 1252A2D, and it's just not reviewable. So I don't know how you get around that. It seems to me this case at this point is about withholding the Convention against Torture. If I can briefly address that issue with regard to the jurisdiction. This Court has held that. However, in this particular case, what our argument is, is not so much the facts, but the way the application of the law was. But I don't understand the difference. I mean, you said that, but I don't see... Could you tell me in one sentence what the legal issue is you think you're bringing before us? Well, what the Court did in this case, and if you look at the case I cited, the case of Mombasa, which was decided by this Court, this Court has jurisdiction where there's a legal issue. In this particular case, what the judge did and the Board of Immigrations affirmed later on was that they never addressed the fine point of changed country conditions. They went to after the changed country conditions, the situation was better and it became normal. But that's just, you know, did they write the right opinion? You know, are there really, you know, the kinds of change in Mongolia that would support relief from the one-year rule? I'm having trouble still figuring out what's the legal issue. The legal issue is if the courts had said there wasn't a changed condition, then that would be acceptable. If the court says that there was changed condition, the application is timely, but the changed conditions reverted back to a better situation, but what the court said, and sorry for interrupting, what the court said was never addressed was there a point of changed conditions. They went straight to there was what occurred in Mongolia. Isn't that essentially a misapplication of the facts to the law? That is to say they took a set of facts later and they applied it here. Perhaps they misapplied it here, but it's still a question of fact applied to law. They also say, I'm just looking at the board's decision, it's a generic statement and that he did not show that any exception to the filing deadline applies to his case. Then they mention a couple of things, lack of knowledge of English, unawareness of ability to apply, and he says those don't constitute extraordinary circumstances. Well, those are obviously not factors that deal with anything that's going on in Mongolia. And then in the next paragraph, they say we agree that the July 2008 riots in Ulaanbaatar don't reflect changed country conditions. So I don't see where they, even if this were the right rule, I don't see where they have failed to touch all the bases. What they refer to is what transpired after the effect, after his case was adjudicated at a full mirror tier. But my point is, I won't belabor that point, but the point is that at the point there is a changed country condition, the court has an obligation to say there was a change or there wasn't. What they said was it got better later, so we go back in essence. Well, they say it's an isolated event, and they, anyway, I'm going to recommend you go on, because a lot of the same arguments that you would make for asylum are arguments you might make for withholding. It's just that the bar is higher, so why don't you discuss withholding? I understand. With regard to this matter, we believe we've met the burdens with regard to withhold, tangibly, asylum withholding in this case. Mr. Atambatra testified clearly and credibly. The court found him credible that he was arrested on several occasions. He was beaten on several occasions. He was deprived food on one of the arrests in that case. He suffered a swollen jaw as a result of one of his beatings. He was deprived economic employment. He was fired at one point after he was arrested and discovered that he worked for basically a fuel company, and then after that when he was in another company, they in essence put his company out of business. And the court, the BIA thinks, by the way, is his surname Atambatra or is it Segmit? Segmit. Okay. They say, look, you know, we don't think this is good treatment, but it's not bad enough to count as economic persecution, and the rest of it falls on the mistreatment side of the line as opposed to the persecution side of the line. So we're not reviewing this de novo. We have to review this with some deference to what the administrative authorities said. Why is that so far off base that we should change it? In reading the decision, you have the courts independently saying, well, the economic factor was not enough to bring it to the threshold of withholding. And then you say the beatings were not enough to bring it to the threshold of withholding. And then you have the other allegations he makes. It was not enough to bring it to the threshold of withholding. However, you cannot take a person's life and segment it into certain portions. You have to take what was done against this individual over the course of his life and look at it from a complete picture. You have Mongolia, which is a large country but a small population of 2 million people. He belonged to a very unique group of people. He was arrested on several occasions. He was beat on several occasions. He was denied an economic opportunity on several occasions. So we would argue that you have to take the whole picture. You can't slice and dice his individual life and say this is why he doesn't qualify in each individual case. The court will believe that. So as for now, though, if we were looking at withholding and we were focusing on the future, if we found that this wasn't enough for past, that's not the end of the discussion. You still have is there some future likelihood of persecution. His party is in power now, and things do seem to be looking up in Mongolia for people of his group. I would agree they do look up somewhat, but he is a unique individual. As we mentioned in our brief, he's a member of this Taj Group, which is a unique clan. It's a very favored group, I thought. It is favored. It makes you more distinguished. But, however, he had training in the Soviet Union at the time in jet propulsion fuels. He came back. His friend who died in prison after being accused of killing his family members. Right, I remember that. So we would argue that he potentially still faces a threat. How old a man is he at this point? He is 52, I believe. So he potentially still faces a threat based on the fact that when he does go back, he does have unique information, unique background. He was trained in the Soviet Union at the time. Is his case, I credibly come in and argue that the fear is as great as it once was. I won't do that to this court, but there was persecution in the past. There's a possibility, a strong possibility of persecution in the future based on his background, based on his expertise, his knowledge, and what transpired in the past. All right. Well, if you want to save a little time. Thank you. You can do that. Mr. Fiorino. Good morning, and may it please the court. I'm Paul Fiorino for the Attorney General. Unless the court has any further questions about the one-year bar and the absence of a genuine legal issue, I'd like to talk about past persecution. Okay. He testified that he had been arrested on two occasions and had been incarcerated twice for 72 hours, but he never sustained any injury that was severe enough to warrant a hospital visit or any medical attention. Why shouldn't we do what Mr. Kola is talking about and look at this in a global way? Look at the whole history of things. I mean, he's an advocate for the Democratic Party. He distributes pamphlets. He's arrested on a number of occasions. You know, I'm glad he wasn't hurt any worse than this. He punched in the face. He's arrested again. Horrible things happened to his friend Bayerbot, as well as unclear what's happened to his son, unclear what's happened to his brother. There are all sorts of threats going around. It seems to me it's a troubling picture. It is troubling, but the board specifically addressed the IJ's finding on that regard. The board said the immigration judge, this is on page two of the board's decision, the immigration judge considered the cumulative significance of the mistreatment reported by the respondent and correctly concluded that it did not rise to the level of persecution. So the agency has considered that and has concluded that it wasn't severe enough. But does the agency have some rule that until somebody starts breaking your legs, it's not going to consider it persecution? It seems to me that's not the right way to look at this. Well, if you look at the cases that we've cited in our brief and distinguish between the ones where past persecution was found and whereas past persecution wasn't found, this court has held that to police the boundary between harassment and persecution is the board's province. That was the Booker case. And you are correct. We agree that the standard of review in this case is substantial evidence to support the agency's finding. So when you consider the three cases we've cited in our brief where no past persecution was found, Prela, Dandan, and Zalega, Dandan specifically. We all remember Dandan vividly because there was a big concern that everybody was going to think that's the bar now. You get to do all the things that happen to Dandan and only until you do something worse. And this guy is the Dandan person detained for three days without food, interrogated, and his face gets swollen as a result of a beating. So this is not an area where we want to be mechanical, I guess I should say. Well, I agree, but there has to be some standard. And if you look at the cases where the court has found persecution, on the other hand, I think it's Bache or Base. He was beaten, his face was cut, his father was beaten, and his wife was raped. That was past persecution. The Asani case, a two-week detention, beating, loss of teeth, was chained to a radiator. Faduba, he was punched and his finger was broken. None of the mistreatment that the petitioner here suffered approaches that. So I think the court can be assured that a finding of no past persecution in this case, to affirm that finding, would be consistent with the court's jurisprudence. But at this point, the petitioner's burden is to show a clear probability of future persecution, and that's where he runs into some more trouble. Well, if he can't show past persecution, he's got to get to the clear probability. Thank you. And he has some problems with that, because as the court points out, the Communist Party is not in power, and all of his fears of future persecution are vague and speculative. I mean, we're not arguing that he doesn't have a subjectively genuine fear. Of course, that's for a well-founded fear of future persecution, the asylum standard. We're not at all suggesting that he's not genuine in this. But to the extent that he has shown a clear probability of future persecution, that evidence doesn't compel that finding. Does the government ever follow up on these cases? It seems to me, of course, it's all split up. We've got the Department of Homeland Security initiating these things. We've got the Executive Office of Immigration Review, yourself, arguing them. Once he's back in Mongolia, the only connection to the United States government would be the existence of our embassy in Ulaanbaatar or whatever other consulates we have around the country. But does anybody ever ask whether these people successfully reestablish themselves, assuming the whole process goes forward and they're sent back? I'm not aware that they do. I can tell you that if they don't, they can reapply for asylum and come back. No, I mean, what if he's dead, though? He's not going to reapply for asylum if he's killed. I know that we have, and I can only speculate that it's limited resources of what we're trying to do. I mean, the DHS is busy. We're very busy right now, and we wouldn't have the resources to follow up. Do we just hope that we're getting it right? Unfortunately, that's the best that we can do, Your Honor. So if you take a look at his evidence in the record, it's his burden at this point to show a clear probability of future persecution. It's all from his testimony, and he testified that he belongs to an ethnic group and that he was in the military. It's really his association with the Democratic Party. That would be a political opinion ground, I think. Maybe a group as well. But that party did experience, and it's a volatile part of the world. What if the Communist Party comes back into power? Well, if the Communist Party comes back into power, at which point he could show a clear probability of future persecution, he could file a motion to reopen with the BIA. Or if he's in Mongolia, he can apply for asylum with the consulate. So there is an avenue for him to pursue this in the future. But right now, on this record, there's... So once he goes back to Mongolia, you're telling me he could just submit a new application for asylum that wouldn't be time-barred? That's a good question. I'm not entirely sure, Your Honor. But I can tell you that if it's not asylum, he could certainly always get withholding. But it doesn't make any sense to call withholding if he isn't even here. Withholding is a... That's true. I'm sorry, Your Honor, I don't have a... So he may or may not have a remedy. You don't know. Correct. Thank you. But all of the evidence that he's put forth is really just speculative and vague, and it doesn't compel any conclusion that he has a clear probability of future persecution or torture, for that matter. There's just not enough evidence in the record. Well, the arrest and the two beatings aren't speculative and vague, but you're suggesting some of the other, the two deaths, for example. Yes. It's not as clear as to what the cause of that is. Yes, the death of brother, the death of his son, which is very horrible. He thinks that the communists were somewhat involved, but... And followed by the phone call after the death of his son. Yes, that's true, that he did get the phone call. But, again, I don't think that the record shows who the caller was or that the caller identified themselves. He thinks it might have been the Communist Party, but he's not 100% sure. So, you know, under the standard of review that the Court's under at this point, we would say the record doesn't compel a conclusion of a clear probability of future persecution or torture. I would ask the Court to affirm the Court's decision to deny the petition. All right. Thank you. Anything further, Mr. Kola? With regard to once he is out of the country, there's nothing he can do if he's back in Mongolia. If the communists do come back to power and he's arrested and harmed, he is stuck with being in that situation. You can't walk into a U.S. embassy and request anything because you're not eligible to apply for asylum outside of the country. You can apply if there's a refugee program. You can go through that program. You can't apply for withholding outside the United States. With regard to this, I don't think there's a set minimum bone breakage or tooth loss that we have to fit into the calculation. You have to look at a person's entire life. In Assani, there was two teeth broken. What if there was only one tooth broken? Would that not qualify for asylum? Assani was in jail for a period of two weeks, but Mr. Attenberter was in jail on different occasions. He was beat when he had a swollen jaw. Sir, are we saying that we need a broken jaw in order to go to the next threshold? The issue is, was he targeted because of his particular social group or political party? Clearly, everyone agrees he was targeted. The judge found him credible because of his political party activism, and we have to look at the whole picture on how he was persecuted. Thank you. All right. Thank you very much. Thanks to both counsel. We'll take the case under advisement, and the court will be in recess.